NOT FOR PUBLICATION

FILED
JAMES J. WALDRON, CLERK

AUG. 21, 2014

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: **ORLANDO ORTIZ,** Debtor. | Case No.: 12-34545 (DHS) <br><br> Judge: Hon. Donald H. Steckroth |
| **NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE,** <br><br> Plaintiff, <br><br> v. <br><br> **ORLANDO ORTIZ,** <br><br> Defendant. | Adv. No.: 12-02232 (DHS) |

# OPINION

**APPEARANCES:**

Attorney General of New Jersey
James M. Bennett, Esq.
R.J. Hughes Justice Complex
PO Box 119
Trenton, New Jersey 08625-0119
*Counsel for New Jersey Department of Labor & Workforce Development*

Orlando Ortiz
78 Dewitt Street
Garfield, New Jersey 07026
*Pro se Debtor*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The New Jersey Department of Labor and Workforce Development, Division of Unemployment and Disability Insurance (the "Department" or "Plaintiff"), filed an adversary proceeding seeking to declare nondischargeable a $10,228.75 debt it alleges is owed by Orlando Ortiz (the "Debtor" or "Defendant") to the Department for overpayment of unemployment benefits. The Department contends that because the Debtor underreported earnings and misrepresented his work status, his debt was obtained through false pretenses, a false representation, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

The Debtor certifies that he never submitted the unemployment claim from which the debt arose and that he neither received nor cashed checks from the Department. He claims the unemployment checks were sent to an address where he did not reside but where his former spouse often stayed. The Debtor therefore contends that that the Department has not sufficiently met its burden of proof under Section 523(a)(2)(A) because it presented no evidential record showing the address to which the unemployment benefit checks were mailed or proof the checks were received by him and deposited in his account .

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (F). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## **RELEVANT FACTS**

On July 16, 2000, the Department alleges the Debtor filed an unemployment benefit claim for the period beginning with the compensable week ending September 16, 2000 and concluding with the compensable week ending February 17, 2001 ("the 2000 Claim"). On August 26, 2001, it is alleged the Debtor filed another benefit claim for the period beginning with the week ending October 6, 2001 and ending with the week ending June 29, 2002 ("the 2001 Claim") (collectively, the "Claims"). The Debtor denies having filed the Claims.

At trial, Barbara Connors-Hart, an investigator with the Department's Division of Unemployment and Disability Insurance, Bureau of Payment Control, testified that all unemployment insurance claimants are given a booklet issued by the State of New Jersey Department of Labor (the "Booklet") regarding their rights and responsibilities and which informs claimants of the requirements to remain eligible for benefits. (Ex. A). The Booklet makes clear to claimants that they must report all earnings to the Department. Ms. Hart explained that the Debtor claimed his benefits by telephone and collected them by check. The telephonic procedure for claiming unemployment benefits requires claimants to use the telephone keypad to report whether they worked during the previous two-week period. The checks received by claimants include endorsement language that explains signing and cashing the check is a certification that the claimant reported all earnings during the relevant period.

The Department spotted a conflict between the unemployment benefits paid to the Debtor and the wages reported by his alleged employers.[1] The Department alleges that throughout the

---

[1] Ms. Hart explained that all employers are required to engage in payroll reporting by means of weekly and quarterly forms. Those payroll records are then compared, on a quarterly basis, against the unemployment benefits paid out by the Department to cross-check benefits paid according to the claimant's social security number. When a wage/benefit conflict is suspected, a weekly wage information request form is generated by the Department's computer program and sent to an employer for confirmation.

time period supporting the Debtor's 2000 Claim, he represented to the Department through bi-weekly telephone certifications that he did not work. During the time period supporting the Debtor's 2001 Claim, the Department contends that he underreported earnings for eleven weeks of the thirty-three week period and failed to report earnings for the other twenty-two weeks. The Department asserts that at all times relevant to the Claims, the Debtor worked for UFS Personnel Corp. ("UFS"), the Little Falls Board of Education ("Little Falls"), Babywear Centre ("Babywear"), and/or the Paterson Board of Education ("Paterson") (collectively, the "Employers").

A weekly wage information request form completed by UFS showed that the Debtor was employed by the company between September 18, 2000 and July 27, 2001—a time period covering nearly the entire 2000 Claim in which the Debtor reported no earnings to the Department. (Ex. C). A form completed by Little Falls showed that the Debtor was paid for a week's work in September 2000, when Debtor allegedly received unemployment benefits under the 2000 Claim. (Ex. D). Paterson reported that it employed the Debtor from October 6, 2001 through June 29, 2002—the time period for which Debtor allegedly received benefits under the 2001 Claim. (Ex. J). Babywear also reported that the Debtor was employed by the company for two weeks from June 18, 2002 through July 1, 2002—during which the Debtor was sent benefits under the 2001 Claim. (Ex. F). It was the Department's testimony that the Debtor received $14,852 in unemployment benefit checks pursuant to his Claims. Had the Debtor reported his outside employment, the Department claims he would have been eligible to receive benefits in the amount of $6,153 pursuant to the Claims.[2]

---

[2] An unemployed individual is permitted to perform part-time work while looking for employment and still receive benefits. The unemployed individual's weekly benefit rate, however, is subject to a reduction for any payment in excess of 20% of his weekly benefit rate. N.J.S.A. 43:21-3(b). Based on the weekly wage information reports filed by the Employers, the Debtor would have been eligible for unemployment benefits at the reduced amount of $6,153.

On July 24, 2008, the Department sent notice to the Debtor of the investigation into the overpayment of his unemployment benefits by mailing a notice addressed to 14 Montclair Ave., 1st Floor, Clifton, New Jersey 07011 (the "Clifton Address"). Ms. Hart testified that there was no response to the notice and the Department's file revealed no evidence the notice was returned by the postal service. As a result of no response, the Department determined the benefits were obtained through false or fraudulent misrepresentation.

In November 2008, the Department mailed a Determination and Demand for Refund of Unemployment Benefits and Imposition of Penalty and Disqualification Because of Willful Misrepresentation (the "Demand") to the Debtor at the Clifton Address informing that he was ineligible for the unemployment benefits received during the time periods supporting the 2000 and 2001 Claims. (Ex. K). The Demand also advised about appellate rights. The Demand was returned by the postal service, and re-mailed to 46 Jackson Ave., Pompton Plains, New Jersey 07444 (the "Pompton Plains Address"). Ms. Hart testified that the Demand sent to the Pompton Plains Address was not returned, and that no attempt was made to appeal to the Department's Appeal Tribunal. Thereafter, the Department determined that benefits had been fraudulently obtained.

The Department asserts that the Debtor received an overpayment of, and thus was demanded to refund, $14,852[3] in unemployment benefits. (Exs. K, L). As a result of the Debtor's failure to make payments on account of the Demand, the Department petitioned the Superior Court to secure its certificates of debt. (Ex. M). The Department also imposed a penalty of $3,713 under the unemployment compensation statute, in addition to interest of

---

[3] Although the Debtor would have been entitled to unemployment benefits in the amount of $6,153 in the absence of a misrepresentation, the Department does not offset this amount from the debt owed by the Debtor. The Department imposes this amount as a discretionary penalty for inaccurate reporting under N.J.S.A. 43:21-16(d)—the penalty section of the unemployment compensation statute.

$457.75 as of April 1, 2014. Pursuant to the certificates of debt, the Department was able to set off certain government funds due to the Debtor including New Jersey state tax refunds in 2010, 2011, and 2012 in order to pay down the balance owed for the overpayment. (Ex. N, P-87). In total, the Debtor repaid the Department $8,794 towards the Demand of the overpayment of benefits.

Thus, the Department contends that the Debtor must refund the $14,852 of benefit overpayments, less the credit for repayments in the amount of $8,794, plus fines and interest in the amount of $4,170.75, and seeks the resulting debt in the amount of $10,228.75 to be excepted from discharge in the Debtor's Chapter 7 bankruptcy proceeding.

The Debtor testified he did not defraud the Department of benefits and, if a fraud occurred, it was probably committed by his former wife. He testified he never submitted an unemployment claim, never spoke with an unemployment investigator, and never received notices or checks from the Department. The Debtor testified that he lived at 1519 Oxford Street, Paterson, New Jersey 07501 (the "Oxford Street Address") prior to moving to 299 Winona Lakes, East Stroudsburg, Pennsylvania 18301 (the "Pennsylvania Residence") where he resided with his former spouse from 1999 to 2007. The weekly wage information request form provided by UFS in 2002 reported the Debtor's last recorded address as 419 Main Street, Paterson, New Jersey, 07501 (the "Main Street Address"). The Debtor testified the Main Street Address is where his mother lives and that he has not resided there since his childhood.

During cross examination, Ms. Hart testified that the notices sent to the Pompton Plains Address were not sent via certified mail. The Debtor pointed out that all Department notices were sent via regular mail and thus the Department has no record that the Debtor actually received the mail at the address the Department used. In addition, Ms. Hart was unable to verify

7

the address to which the Debtor's unemployment benefit checks were mailed. Significantly, she testified the Department was unable to present any substantive evidence regarding the cashing of the benefit checks or the accounts into which the unemployment benefit checks were deposited because the Department does not preserve financial records as far back as the times relevant to the Claims. The actual checks showing Debtor's endorsement were not admitted into evidence and no evidence showing the funds were received by the Debtor was introduced. Thus, no evidence of Debtor having received the funds is in the record.

The Debtor testified that his former spouse handled his finances and had access to his social security number. She worked and often stayed at the Main Street Address during the time the Claims were made. He testified that his former spouse failed to pay their mortgage without his knowledge, resulting in the foreclosure of the Pennsylvania Residence, and had taken out credit cards in his name without his knowledge. In 2008, the Debtor filed for divorce when his former spouse ran off to Puerto Rico and then to Texas with their child without Debtor's knowledge or consent. The Debtor testified that his former spouse's brother, who has a criminal record, also had access to and used the Debtor's social security number.

The Debtor stated that monthly child support payments of $132 were garnished from his paychecks during the time the Claims were made. The Department asserts the garnishment was taken from the unemployment benefits issued in the Debtor's name. The Debtor also testified that he was aware a portion of his tax refunds were being withheld, but when he inquired as to the reason for this, the IRS informed him he was missing forms relevant to his employment. The Debtor maintains that he first became aware of the Department's judgment against him in 2010 when he opened an unemployment claim. When the Debtor inquired as to why the Department was withholding his money, he was informed that the money was being used to pay back the

8

Claims. He testified this was the first time he learned he owed money for fraudulent receipt of unemployment benefits. The Debtor requested more information about the Department's withholding and testified he then learned that the Claims were filed and the Department sought funds from him.

## DISCUSSION

Section 523(a)(2)(A) provides that an individual debtor may not obtain discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523. The Third Circuit has stated that Section 523(a)(2)(A) requires proof of actual fraud, which consists of the following elements:

> (1) [the debtor] obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiffs reasonably relied on the representation; and (5) the Plaintiffs suffered loss, which was proximately caused by the Debtor's conduct.

*In re Cohen*, 185 B.R. 180, 182 (Bankr. D.N.J. 1995) *aff'd,* 191 B.R. 599 (D.N.J. 1996). "[I]n a trial on the merits, the creditor bears the burden of proving that a debt is nondischargeable under § 523(a) under a preponderance of the evidence standard, and 'exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors.'" *In re Langman*, 465 B.R. 395, 403 (Bankr. D.N.J. 2012) (citing *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir. 1995)).

In the present case, the Debtor does not dispute that the Department reasonably relied on the representation. Thus, only the remaining four elements will be discussed.

Here, the Department is unable to establish by a preponderance of the evidence that the Debtor obtained money through a material representation. *See In re Cohen*, 185 B.R. at 182. The Debtor testified that he never submitted a claim or received any checks for unemployment benefits, and that he lived at the Pennsylvania Residence for eight years. This testimony is consistent with the evidence presented by the Department showing notices were mailed only to New Jersey addresses at all times relevant to the Claims. The Department presented no evidence (indeed because of failure to maintain the necessary records, it could not) showing the Debtor received any of its notices or checks. It has not established that it ever mailed a check for unemployment benefits to the Debtor's actual residence, or that the Debtor deposited a check from the Department into his account. Thus, the Department has not shown by a preponderance of the evidence that the Debtor obtained money through a material representation. *See In re Langman*, 465 B.R. 395, 403 (Bankr. D.N.J. 2012).

The Department has also submitted insufficient evidence to prove the Debtor had knowledge of, or was reckless regarding, the misrepresentation of the unemployment benefits. *See In re Cohen*, 185 B.R. at 182. The Department cannot establish that the Debtor filed, or even knew about, the Claims until more than nine years after they were submitted. The Department contends that because child support owed by the Debtor was being garnished from the unemployment benefits that were filed under his name, the Debtor was on notice to inquire as to why he was receiving a credit for child support. The Department also asserts that the Debtor should have noticed his taxes were being withheld. The Debtor testified that his former spouse handled his finances and that he paid minimal attention to the cash flow in and out of his accounts. The Department's inquiry notice argument falls short of proving by a preponderance

10

of the evidence the Debtor's knowledge or reckless disregard of the truth regarding the misrepresentation.

Along the same lines, the Department failed to demonstrate the Debtor had the intent to deceive. *See In re Cohen*, 185 B.R. at 182. Because "a debtor will rarely, if ever, admit that deception was his purpose, intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3d Cir. 1995). Here, the evidence (or lack thereof), including the trial testimony, leads the Court to conclude, from the totality of the circumstances, that the Debtor had no knowledge, let alone intent, to defraud or misrepresent.

Finally, because the Department cannot prove that the Debtor applied for, or received, any payment on the Claims, the Department has not established that its loss was proximately caused by the Debtor's conduct. *See In re Cohen*, 185 B.R. at 182.

## CONCLUSION

For the above reasons, the Court finds that the discharge of the alleged debt owed by the Debtor to the Department is granted. The Department did not meet its burden of proving by a preponderance of the evidence that the debt was obtained through false pretenses, a false representation, or actual fraud under Section 523(a)(2)(A) of the Bankruptcy Code.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

*s/ Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 21, 2014